## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH MOULTON, Derivatively on Behalf of Nominal Defendant CPI AEROSTRUCTURES, INC., | Case No.     1:20-cv-2092 |
| Plaintiff, | **SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| DOUGLAS MCCROSSON, VINCENT PALAZZOLO, TERRY STINSON, CAREY E. BOND, JANET K. COOPER, MICHAEL FABER, WALTER PAULICK, ERIC ROSENFELD, HARVEY J. BAZAAR, | |
| Defendants, | |
| and | |
| CPI AEROSTRUCTURES, INC., | |
| Nominal Defendant. | |

Plaintiff Keith Moulton ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, CPI Aerostructures, Inc. ("CPI" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and Contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by CPI with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

1

## I.   NATURE AND SUMMARY OF THE ACTION

1.     CPI supplies aircraft parts for fixed wing aircraft and helicopters in commercial and defense markets.  The Company is a prime contractor to the U.S. Department of Defense. CPI also provides engineering, supply chain management, and maintenance, repair and overhaul ("MRO") service.

2.     In January 2018, the Company adopted a new accounting standard regarding contracts from customers.  In subsequent statements, CPI touted strong revenue growth driven by its operations and stated that its internal control over financial reporting was effective.

3.     On February 8, 2019, CPI disclosed that its financial statements for the three and nine months ended September 30, 2018 reported in its Form 10-Q could no longer be relied upon due to an "error . . . in the Company's billing process."  The error was "limited to one instance" and led to "(i) a reduction of revenue and income before provision for income taxes of approximately $900,000 to $950,000, (ii) a reduction of net income of approximately $725,000 to $775,000 and (iii) a reduction of fully diluted earnings per share of approximately $ 0.09, for each such period."

4.     On this news, CPI's stock price fell $0.59 per share, or over 8.5%, to close at $6.34 per share on February 8, 2019, thereby injuring investors.

5.     On February 14, 2020, CPI revealed that its financial statements for the past six quarters "should no longer be relied upon due to an error in those financial statements relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606." The Company also reported that there was a material weakness in its internal control over financial reporting as of the end of each of the affected periods.

6.     On this news, the Company's stock price fell $1.80 per share, or approximately 27%, to close at $4.87 per share on February 14, 2020, injuring investors.

2

7.     These revelations precipitated the filing of a securities class action in this District against CPI and all of the defendants named herein, captioned *Rodriguez v. CPI Aerostructures, Inc., et al.*, Case No. 1:20-cv-00982 (the "Securities Class Action").

8.     Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.  The Board is currently composed of seven members, all of whom are named in this action.  As alleged herein, McCrosson as CEO and Cooper, Faber, and Paulick as members of the Audit Committee, knew that the Company had improperly recognized revenue in certain periods, yet allowed misleading statements to be disseminated.  Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Section 10(b) of the Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.     PARTIES

**Plaintiff**

11.     Plaintiff Keith Moulton purchased 2,200 shares of CPI stock in December 2017 and has continuously owned his CPI stock since that date.

**Nominal Defendant**

12.     Nominal Defendant CPI is a New York corporation with its principal executive offices located at 91 Heartland Blvd., Edgewood, NY 11717.  The Company stock trades on the New York Stock Exchange under the symbol "CVU."

**Defendants**

13.     Defendant Douglas McCrosson ("McCrosson") has served as the Chief Executive Officer ("CEO"), President, and a director of the Company since March 2014.  McCrosson is a defendant in the Securities Class Action.

14.     Defendant Vincent Palazzolo ("Palazzolo") served as Chief Financial Officer from May 2004 to November 2019.  Palazzolo is a defendant in the Securities Class Action.

15.     Defendant Terry Stinson ("Stinson") has served as Chairman of the Board since June 2014.

16.     Defendant Carey E. Bond ("Bond") has served as a director of the Company since December 2016.

17.     Defendant Janet K. Cooper ("Cooper") has served as a director of the Company since April 2019.  She is Chair of the Audit Committee.

18.     Defendant Michael Faber ("Faber") has served as a director of the Company since August 2013.  He is a member of the Audit Committee.

19.     Defendant Walter Paulick ("Paulick") has served as a director of the Company since April 1992.  He is a member of the Audit Committee.

20.     Defendant Eric Rosenfeld ("Rosenfeld") has served as a director of the Company since 2003.

21.     Defendant Harvey J. Bazaar ("Bazaar") served as a director of the Company from 2006 to June 2019.

22.     The defendants named in ¶¶ 13-21 are sometimes referred to hereinafter as the "Individual Defendants."

**Relevant Non-Parties**

23.     Defendant Dan Azmon ("Azmon") served as Chief Financial Officer from November 13, 2019 to February 2020.

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers, directors, and/or fiduciaries of CPI and because of their ability to control the business and corporate affairs of CPI, at all relevant times, the Individual Defendants owed CPI and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage CPI in a fair, just, honest, and equitable manner.   The Individual Defendants were required to act in furtherance of the best interests of CPI and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.   Each director and officer of the Company owes to CPI and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of CPI, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.   Because of their advisory, executive, managerial, and directorial positions with CPI, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of CPI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the

Company.  By virtue of such duties, the officers and directors of CPI were required to, among other things:

(a)   Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)   Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)   Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)   When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.   SUBSTANTIVE ALLEGATIONS

### A.   Company Overview

27.   CPI supplies aircraft parts for fixed wing aircraft and helicopters in commercial and defense markets.  The Company is a prime contractor to the U.S. Department of Defense. CPI also provides engineering, supply chain management, and maintenance, repair and overhaul ("MRO") services.

### B.   The Individual Defendants Issue False and Misleading Statements

28.   On May 15, 2018, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018.  Therein, the Company reported revenues of $18.2 million, a gross profit of $4.0 million and net income of $1.3 million for the quarter.  The quarterly report contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants

McCrosson and Palazzolo, attesting to the accuracy of the financial reporting and the effectiveness of the Company's internal control over financial reporting.

29.     On August 8, 2018, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to issue a press release announcing its second quarter 2018 financial results, which stated in relevant part:

> Effective January 1, 2018, the Company adopted Accounting Standards Codification Topic 606 Revenue from Contracts with Customers ("ASC 606") using the modified retrospective method. None of the Company's contracts' revenue recognition changed materially as a result of the adoption of ASC 606.

> **2Q 2018 vs. 2Q 2017**

> - Revenue was $20.3 million compared to $16.7 million;
>
> - Gross profit was $4.6 million compared to $3.7 million;
>
> - Gross margin was 22.6% compared to 22.0%;
>
> - Pre-tax income was $1.6 million compared to $1.2 million;
>
> - Net income was $1.3 million compared to $0.8 million;

> * * *

> "We delivered another solid performance in the second quarter *highlighted by higher revenue sequentially and year-over-year and the fifth consecutive quarter of EPS profitability that underscores our growing reputation as an efficient supply chain partner to the defense industry* and continued focus on operational excellence," said Douglas McCrosson, president and CEO. "We are particularly pleased to deliver growth for the quarter and first half of the year that exceeded our plans in light of the uncertain defense spending environment entering 2018 that was resolved with the recent passage of the 2018 Omnibus Spending Bill.

30.     On August 9, 2018, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the results reported in the press release. The report contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the

accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

31.     On November 8, 2018, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to issue a press release announcing its third quarter 2018 financial results, which stated in relevant part:

**3Q 2018 vs. 3Q 2017**

- Revenue was $19.9 million compared to $20.7 million;
- Gross profit was $4.8 million compared to $4.9 million;
- Gross margin was 24.1% compared to 23.7%
- Pre-tax income was $1.6 million compared to $2.5 million;
- Net income was $1.3 million compared to $1.7 million;
- Earnings per diluted share were $0.15 compared to $0.19 per diluted share;
- Cash flow from operations was $0.5 million compared to $0.9 million; and
- Total backlog at $442.2 million with multi-year defense contracts comprising 83%.

Douglas McCrosson, president and CEO of CPI Aero, stated, "We are pleased to report another strong quarter of execution, profitability and positive cash flow while progressing business development initiatives that yielded a 23% sequential increase in total backlog."

32.     On November 13, 2018, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, affirming the previously reported financial results.  The report also contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

33.     The above statements in ¶¶ 28-32 were materially misleading because they failed to disclose: (i) that the Company had improperly recognized revenue from contracts with customers; (ii) that, as a result, revenue was overstated; and (iii) that there was a material weakness in CPI's internal control over financial reporting.

**C.**     **The Truth Begins to Emerge While the Individual Defendants Continue to Issue Materially Misleading Statements**

34.     On February 8, 2019, CPI disclosed that its financial statements for the three and nine months ended September 30, 2018 reported in its Form 10-Q could no longer be relied upon due to an "error . . . in the Company's billing process."  According to the Company, the alleged error inflated the Company's revenue and income before provision for income taxes, net income, and earnings per share for each such period.  In a Form 8-K filed with the SEC, CPI stated, in relevant part:

> The identification of the error was made by management during the Company's review of the billing process for the year ended December 31, 2018 in connection with the preparation of the Company's 2018 financial statements. Management's preliminary conclusion is that the error was limited to one instance and that the effect of correcting the ***foregoing error in the Company's financial statements for the three and nine months ended September 30, 2018 is (i) a reduction of revenue and income before provision for income taxes of approximately $900,000 to $950,000, (ii) a reduction of net income of approximately $725,000 to $775,000 and (iii) a reduction of fully diluted earnings per share of approximately $ 0.09, for each such period.*** The error is not expected to have a material impact on the Company's balance sheet as of September 30, 2018 or the statement of cashflows for the three and nine months ended September 30, 2018.

35.     In addition, the Company reported material weaknesses in its internal controls:

> In connection with the restatement noted above, ***management has determined that a material weakness existed in the Company's internal control over financial reporting as of September 30, 2018. As a result, the Company's chief executive officer and chief financial officer have concluded that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as of September 30, 2018.*** A discussion of the Company's plan to remediate the material weakness will be contained in the Company's Annual Report on Form 10-K for the year ended December 31, 2018, which the Company expects to file with Securities and Exchange Commission on or before its filing deadline.

36.     On this news, CPI's stock price fell $0.59 per share, or over 8.5%, to close at $6.34 per share on February 8, 2019, thereby injuring investors.

37.     On March 13, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to issue a press release announcing the Company's fourth quarter and full year 2018 financial results.  Therein, the Company stated, in relevant part:

**Full Year 2018 vs. Full Year 2017**
- Revenue was $83.9 million compared to $81.3 million;
- Gross profit was $18.3 million compared to $18.6 million;

*        *        *

"2019 is off to a very strong start with new programs recently announced with long-time customers Sikorsky, Lockheed Martin, and Northrop Grumman and strong quote activity across the defense and commercial segments of our business. With initial production deliveries scheduled for 2019, execution on the Lockheed Martin and Northrop Grumman programs, in particular, are especially fundamental to our revenue growth this year," continued Mr. McCrosson. "In addition, WMI's bookings have been better than anticipated with approximately $3 million in new orders secured to date this year. . . ." Concluded Mr. McCrosson, "***Having laid the foundation for our future growth through organic as well as inorganic initiatives in 2018, we are focused on executing across our entire portfolio in 2019 while also pursuing an active M&A strategy to supplement our organic growth.*** With defense spending stable near-term and macro drivers that favor positive spending trends longer-term, momentum in new awards and a strengthened balance sheet, we have the elements in place for both top and bottom line growth 2019."

38.     On April 1, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to file its annual report on Form 10-K with the SEC for the period ended December 31, 2018, affirming the previously reported financial results.  The report also contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

39.     On May 10, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to issue a press release announcing its first quarter 2019 financial results.  Therein, the Company stated, in relevant part:

**First Quarter 2019 vs. First Quarter 2018**

- Revenue of $25.6 million compared to $18.2 million
- Gross profit of $5.4 million compared to $4.0 million
- Gross margin was 21.2% compared to 22.3%
- Pre-tax income of $2.1 million compared to $1.6 million
- Net income of $1.7 million compared to $1.3 million
- Earnings per diluted share of $0.14 compared to $0.14 on a higher number of shares outstanding
- Total backlog at $452.9 million with multi-year defense contracts comprising 84%
- Cash flow from operations was $(2.3) million compared to $(2.6) million

"2019 is off to a very strong start with higher revenue, gross profit and net income year-over-year and excellent execution on key strategic priorities for the year. We completed the consolidation of Welding Metallurgy, Inc. ("WMI") into our facility on schedule and we have been hitting our customer's production milestones on the new programs that cumulatively underpin our growth expectations this year and beyond," stated Douglas McCrosson, president and CEO of CPI Aero.

"***Revenue growth in the quarter was driven predominantly by the increase in production rate of our Next Generation Jammer Pod program for Raytheon and revenue from our WMI subsidiary.*** We also had a strong booking quarter for both CPI Aero and WMI. Our consolidated shipping backlog increased by approximately 14% during the quarter and now is approximately $134 million, for a book-to-bill ratio of approximately 2.0 during the quarter."

40.     On May 10, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, Rosenfeld, and Bazaar caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019, affirming the previously reported financial results. The report also contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

41.     On August 7, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, and Rosenfeld caused CPI to issue a press release announcing its second quarter 2019 financial results.  Therein, the Company stated, in relevant part:

**Second Quarter 2019 vs. Second Quarter 2018**
- Revenue of $23.2 million compared to $20.3 million

- Gross profit of $5.0 million compared to $4.6 million
- Gross margin was 21.4% compared to 22.6%

* * *

*"We delivered solid, year-on-year growth in revenue and net income in the second quarter that reflects continued operational execution and progression on our strategic priorities*," stated Douglas McCrosson, president and CEO of CPI Aero. "Similar to the first quarter, bookings at CPI Aero and WMI were strong, and product sales backlog now stands at $153.2 million, up 14 % from the end of the first quarter. We also continued to execute on our Next Generation Jammer pod program, as well as our three new key programs that are central to our growth expectations in 2019 and support a multi-year growth trajectory.

42.     On August 8, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, and Rosenfeld caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019, affirming the previously reported financial results.  The report also contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

43.     On November 6, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, and Rosenfeld caused CPI to issue a press release announcing its third quarter 2019 financial results.  Therein, the Company stated, in relevant part:

**<u>Third Quarter 2019 vs. Third Quarter 2018</u>**

- Revenue of $25.7 million compared to $19.0 million, an increase of 35%;
- Gross profit of $5.0 million compared to $3.9 million, an increase of 28%;
- Gross margin was 19.3% compared to 20.4%, a decrease of 110 basis points;

* * *

"We delivered an exceptional quarter of growth and performed well operationally while advancing our strategic priorities for 2019. *Revenue growth in the quarter was driven principally by our WMI subsidiary and from our Northrop Grumman E-2D Advanced Hawkeye and Raytheon Next Generation Jammer - Mid Band programs.* We continued to win new contracts at a strong pace with the addition of

several substantial awards and incremental new contracts for WMI and total backlog at September 30 is the highest in our history at $534 million," stated Douglas McCrosson, president and CEO of CPI Aero. "New contract momentum has continued into the fourth quarter, including an award from Raytheon to produce prototypes of a pod. We were also pleased to be recognized for our capabilities and expertise with the receipt last month of an Aviation Week Program Excellence Award for our work on Next Generation Jammer- Mid Band."

44.   On November 8, 2019, defendants McCrosson, Palazzolo, Stinson, Bond, Cooper, Faber, Paulick, and Rosenfeld caused CPI to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019, affirming the previously reported financial results. The report also contained SOX certifications signed by defendants McCrosson and Palazzolo, attesting to the accuracy of the financial reports and the effectiveness of its internal control over financial reporting.

45.   The above statements in ¶¶ 35-36, 37-44 were materially misleading because they failed to disclose: (i) that the Company had improperly recognized revenue from contracts with customers; (ii) that, as a result, revenue was overstated; and (iii) that there was a material weakness in CPI's internal control over financial reporting.

**D.   The Truth Fully Emerges**

46.   On February 14, 2020, the Company revealed that its financial statements for several periods should no longer be relied upon due to errors related to recognition of revenue from contracts with customers under ASC Topic 606. Specifically, CPI disclosed in a press release, in relevant part:

> [CPI] today announced that the Audit Committee of the Board of Directors of CPI Aero determined, based on the recommendation of management and in consultation with CPI Aero's independent registered public accounting firm, that the Company's financial statements included in its annual report on Form 10-K for the year ended December 31, 2018, quarterly reports on Forms 10-Q for the quarters ended March 31, 2018, June 30, 2018, and September 30, 2018, and quarterly reports on Forms 10- Q for the quarters ended March 31, 2019, June 30, 2019, and September 30, 2019 ***should no longer be relied upon due to an error in those financial statements relating to the Company's recognition of revenue from contracts with***

*customers under ASC Topic 606. Similarly, the independent auditor's reports on the effectiveness of internal control over financial reporting for the year ended December 31, 2018, management's reports on the effectiveness of internal control over financial reporting, press releases, and investor communications describing the Company's financial statements for such periods should no longer be relied upon.* The Company's cash flows from operations for the affected periods are not expected to be impacted.

The error was uncovered as part of the preparation of the Company's 2019 annual financial statements. After reconsideration of the terms of the Company's contracts with customers, *Management's preliminary conclusion is that certain revenues and net income were recognized prematurely or inaccurately due to an incorrect application of generally accepted accounting principles. Therefore, previously reported revenue and net income are believed to have been overstated.* The error is also expected to have an impact on the Company's balance sheets for the affected periods. Specifically, retained earnings and contract assets are believed to be overstated.

47.     In addition, the Company reported:

*Management has determined that a material weakness existed in the Company's internal control over financial reporting as of the end of each of the affected periods.* The Company has reviewed its financial closing process and believes it has identified the corrective action necessary to remediate the cause of the error. The Company plans to include a discussion of the Company's plan to remediate the material weakness in its annual report on Form 10-K for the year ended December 31, 2019.

48.     The Company also announced that Chief Financial Officer Dan Azmon resigned from the Company, effective February 11, 2020.  The Board of Directors appointed current director of financial planning and analysis, Thomas Powers, as acting chief financial officer.

49.     On this news, the Company's stock price fell $1.80 per share, or approximately 27%, to close at $4.87 per share on February 14, 2020, injuring investors.

## VI.     DAMAGES TO THE COMPANY

50.     As a direct and proximate result of the Individual Defendants' conduct, CPI has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a)      Legal fees incurred in connection with the Securities Class Action;

b)      Any funds paid to settle the Securities Class Action; and

c)      Costs incurred from compensation and benefits paid to the defendants who have breached their duties to CPI.

51.      In addition, CPI's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

52.      The actions complained of herein have irreparably damaged CPI's corporate image and goodwill.  For at least the foreseeable future, CPI will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that CPI's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.      Plaintiff brings this action derivatively in the right and for the benefit of CPI to redress injuries suffered, and to be suffered, by CPI as a direct result of breaches of fiduciary duty by the Individual Defendants and for contribution for violations of Section 10(b) of the Exchange Act of 1934.  CPI is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

54.      Plaintiff will adequately and fairly represent the interests of CPI in enforcing and prosecuting its rights.

55.      Plaintiff has continuously been a shareholder of CPI at times relevant to the wrongdoing complained of and is a current CPI shareholder.

56.      When this action was filed, CPI's Board of Directors consisted of defendants McCrosson, Stinson, Bond, Cooper, Faber, Paulick, and Rosenfeld.  Plaintiff did not make any

15

demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Defendant McCrosson**

57.     At all relevant times, McCrosson was the Company's CEO and President, and therefore was not independent under NYSE listing rules.  As an employee, McCrosson derives substantially all of his income from his employment with CPI, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis. Moreover, as CEO and as alleged herein, McCrosson personally issued the misleading statements alleged herein. As a result, McCrosson would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

**Defendants Cooper, Faber, and Paulick**

58.     Cooper, Faber, and Paulick served as the members of the Audit Committee at all relevant times.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations.  As alleged herein, Cooper, Faber, and Paulick failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in CPI's SEC filings and other disclosures.  Thus, Cooper, Faber, and Paulick breached their fiduciary duties and are not disinterested, and demand is excused as to them.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of CPI's business and affairs, particularly with respect to issues as fundamental as public disclosures.

61.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of CPI.

62.     In breach of their fiduciary duties owed to CPI, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

63.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

64.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, CPI has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**Against McCrosson and Palazzolo for Contribution**
**for Violations of Sections 10(b) and 21D of the Exchange Act**

65.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

66.     Defendants McCrosson and Palazzolo are named as defendants in related securities class actions.  The conduct of these Defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

67.     CPI is named as a defendant in related securities class actions that allege and assert claims arising under §10(b) of the Exchange Act.  The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.  If CPI is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

68.     As officers, directors and otherwise, Defendants McCrosson and Palazzolo had the power or ability to, and did, control or influence, either directly or indirectly, CPI's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated §10(b) of the Exchange Act and SEC Rule 10b-5.

69.     Defendants McCrosson and Palazzolo are liable under §21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

70.     Defendants McCrosson and Palazzolo have damaged the Company and are liable to the Company for contribution.

71.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of CPI, demands judgment as follows:

A.      Declaring that plaintiff may maintain this action on behalf of CPI and that plaintiff is an adequate representative of the Company;

B.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.      Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to CPI;

D.      Directing CPI to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect CPI and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen CPI's oversight of its disclosure procedures;

4.      a provision to control insider transactions; and

5.      a provision to permit the stockholders of CPI to nominate at least three candidates for election to the Board;

E.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of CPI has an effective remedy;

F.    Awarding to CPI restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: May 7, 2020                    By: __s/Benjamin I. Sachs-Michaels_____

**GLANCY PRONGAY & MURRAY LLP**
Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com

*Counsel for Plaintiff Keith Moulton*

## <u>VERIFICATION</u>

I, Keith Moulton, do hereby verify that I am a holder of common stock of CPI Aerostructures, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 5/6/2020

Keith Moulton