UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CPI AEROSTRUCTURES STOCKHOLDER DERIVATIVE LITIGATION | Master File No. 1:20-cv-02092 |

**DECLARATION OF MATTHEW M. HOUSTON IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF <u>DERIVATIVE SETTLEMENT AND APPROVAL OF SHAREHOLDER NOTICE</u>**

I, Matthew M. Houston, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge:

1. I am a partner in the law firm of Glancy Prongay & Murray LLP, counsel for Plaintiffs Paul Berger ("Berger") and Keith Moulton ("Moulton") (collectively, "Plaintiffs"), who respectfully seek preliminary approval of the proposed derivative settlement and approval of shareholder notice pursuant to Federal Rule of Civil Procedure 23.1. I am a member in good standing of the New York State Bar. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto. I submit this Declaration in support of Movants' Motion for Permissive Intervention, filed contemporaneously herewith.

2. Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation of Settlement and exhibits thereto executed by the parties as of June 10, 2022.

3. Upon final approval of the proposed settlement, CPI will institute and maintain a host of corporate governance reforms that directly address the claims set forth in the Actions and the 2021 Inspection Demand, including the following:

1

**Board and Management**

      A.    Director Training, Continuing Education, Evaluation and Reporting, and Annual Self-Assessment

The Company shall cover reasonable expenses for directors to attend training on corporate governance guidelines and best-in-class practices. Additionally, at least once per calendar year, the Company shall also sponsor a presentation to the Board on corporate governance issues, to be presented by an outside speaker.

      B.    Newly-Appointed Board Members

The Board currently consists of seven (7) members. Within twelve (12) months after final Court approval of the Settlement, the Company shall appoint a new Board member that meets the diversity objectives set forth below and who is independent within the meaning of the NYSE American listing standards.

The Company acknowledges and agrees that the Actions and the 2021 Inspection Demand were together a substantial or material factor in the appointment of Richard S. Caswell to the Board and as Chairperson of the Audit and Finance Committee (the "Audit Committee"). Mr. Caswell is a finance and accounting executive with extensive experience in financial management, including government contracting and accounting.

      C.    Newly-Appointed Chief Financial Officer

The Company acknowledges and agrees that the Demands and Derivative Actions were a substantial or material factor in the appointment of Andrew Davis as Chief Financial Officer ("CFO"). Mr. Davis is a financial executive with more than thirty years of experience in finance and accounting who brings extensive controllership, financial reporting and analysis, corporate governance, change management, and investor relations experience in both publicly-held and private companies.

      D.    Newly-Appointed Controller

The Company further acknowledges and agrees that the Demands and Derivative Actions were a substantial or material factor in the appointment of a new Controller to assist the CFO in overseeing the accounting operations of CPI.

**Audit Committee**

The Audit Committee shall continue to discharge its duties and responsibilities and its Charter shall be amended to memorialize the Audit Committee's duties to:

a) Monitor and review new accounting pronouncements that are likely to impact the Company;

b) Discuss pending technical and regulatory matters that could affect the Company's financial statements;

   c) Work with an outside consultant to conduct an annual assessment of management's contract review process to ensure compliance with accounting standards, including but not limited to, Generally Accepted Accounting Principles ("GAAP");

   d) Work with an outside consultant to assess the Company's enterprise risk management function to ensure best practices in accordance with COSO guidelines; and

   e) Conduct an annual assessment of the outside auditor engagement team for technical competence, industry knowledge and experience, communication, performance and independence.

In addition, the Audit Committee shall, in accordance with COSO guidelines, compare similarly situated organizations, interview key employees, and identify existing laws and regulations posing current and emerging compliance risks. The Audit Committee shall ensure that the compliance risk identification process is in documented policies and procedures. The Audit Committee shall report to the full Board on any identified compliance risks that may have material financial implications on CPI.

**Retention of an Outside Consultant to Review ASC 606 Compliance and Inventory Accounting Issues**

As part of the restatement process and the remediation of CPI's internal controls, CPI retained an outside consultant to ensure compliance with ASC 606. By reason of the Settlement, the Company obligates itself to continue to retain an outside consultant to: (i) undertake a review of CPI's revenue recognition practices under ASC 606; (ii) make recommendations for remediation as may be necessary; and (iii) recommend appropriate training and education for CPI officers, directors, and personnel. Among other things, the outside consultant shall:

   a) Conduct a detailed analysis of management's assessment of contracts with CPI's customers;

   b) Evaluate the adequacy of the Company's internal controls related to ASC 606;

   c) Evaluate the adequacy of the Company's accounting systems and other processes necessary for compliance with ASC 606;

   d) Review the processes for communication with the Company's Audit Committee;

   e) Review CPI's accounting personnel to ensure appropriate skill, competencies, and expertise; and

   f) Evaluate the adequacy of the Company's accounting systems and other processes relating to inventory valuation and accounting

**Appointment of a New Independent Outside Auditor**

The Company further acknowledges and agrees that the Actions were a substantial or material factor in the Company's decision to engage RSM US LLP ("RSM") as its new independent outside auditor. In selecting RSM as its new independent outside auditor, the Company considered, among other things, industry and firm qualifications, independence, results of any recent regulatory inspections or investigations, and RSM's approach to quality control and consultations.

**Employee Compliance Training**

The Company shall mandate a training program, led by the CFO, that includes the following:

a) The CFO, or an appropriately accredited training professional, shall conduct training for all members of the Company's finance team that have responsibility for U.S. Securities and Exchange Commission reporting and/or establishing the Company's accounting policies concerning compliance with GAAP, revenue recognition, and other financial reporting regulations and policies, including changes in the law;

b) All employee training shall be conducted annually and should last a minimum of two (2) hours;

c) Training shall be in person where practicable;

d) Training shall be mandatory for all finance team employees;

e) Training shall allow time for Q&A; and

f) The CFO will keep a record of employee attendance. Any employee who willfully refuses to attend his or her annual training is subject to appropriate discipline, up to and including termination.

**Retention of an Outside Consultant to Review Anti-Discrimination Policy**

CPI shall continue to retain an outside consultant to review its anti-discrimination policies and, within six (6) months after final approval of the Settlement, with the assistance of the consultant, develop diversity objectives and an action plan for carrying out those goals ("Action Plan"). Thereafter, with the assistance of the consultant, CPI shall review its anti-discrimination policy and diversity objectives after two (2) years to ensure compliance with industry best practices.

In addition, CPI shall assign a new Equal Employment Opportunity Coordinator who will be responsible for the day-to-day implementation and monitoring of the Company's Action Plan.

**Diversity and Inclusion**

CPI must encourage and promote diversity among its Board members and senior executive officers. CPI's Action Plan will include meaningful steps to:

a) Recruit and attract diverse candidates for Board positions;

b) Evaluate and/or interview potential director nominees who meet the nomination and selection criteria set forth below; and

c) Recruit and attract diverse candidates who can assume senior executive positions or who can be placed on track to such a position.

As part of its nomination and selection process, CPI will:

a) Consider candidates for both director and senior management roles who are highly qualified based on their experience, education, expertise, judgment, and personal qualities, as well as general and sector-specific knowledge;

b) Consider diversity criteria, among other relevant criteria, when determining the optimum composition and balance for the Board;

c) Review potential candidates for both director and senior management roles from a variety of backgrounds and perspectives, having in mind the Company's diversity objectives; and

d) Ensure that appropriate efforts are made to include women in the list of candidates being considered for Board positions, in an effort to support the specific objective of gender diversity.

CPI acknowledges and agrees that the Actions and the 2021 Inspection Demand were substantial or material factors in the appointment of diverse female candidates for the roles of: (1) Vice President of Human Resources and Administration; and (2) Controller.

**Whistleblower Policy**

The Company will continue to maintain written policies and procedures in its employee handbook and code of conduct that protect whistleblowers (the "Whistleblower Policy"). In addition, the Whistleblower Policy shall be amended to provide for the following:

a) Memorialization in writing of a log of whistleblower complaints, as well as the results of all investigations of complaints. This log shall be maintained for a period of not less than five (5) years. The Company shall require its independent outside auditor to review the log and any investigation results in connection with each annual audit;

b) At each regularly scheduled CPI Board meeting, the Board shall be provided with a summary of the types of whistleblower complaints received, as well as any material information resulting from any internal investigation into such complaints;

    c) CPI shall post information regarding its Whistleblower hotline on its website and make clear that it is available to assist on matters pertaining to corruption, fraud, or similar unlawful activities at CPI, and the Company shall provide alternative reporting mechanisms including suggestion boxes or an email address; and

    d) The Company shall inform employees of whistleblower options and whistleblower protections in employee communications provided at least twice per year and via the Company's intranet.

    4.    Plaintiffs' Counsel has significant experience in derivative litigation and has negotiated substantial derivative settlements in the past. Based upon their investigation into the claims and the underlying events alleged in this action and legal research, Plaintiffs and their counsel have concluded that the terms and conditions of the proposed settlement are fair, reasonable, and adequate, and in the best interests of the Company.

    5.    Plaintiffs' counsel had thoroughly evaluated the strengths and weaknesses of Plaintiffs' claims based on (i) review of CPI's press releases, recorded public statements, U.S. Securities and Exchange Commission ("SEC") filings, and securities analysts' reports and advisories about the Company; (ii) review of relevant business and media reports about the Company; (iii) review and analysis of the filings and pleadings in the Securities Class Action; (iv) review and evaluation of certain internal and confidential CPI documents produced in response to books and records demands pursuant to Section 624 and/or New York common law; (v) factual and legal research and analysis conducted in preparing the derivative complaints; (vi) compilation and analysis of data bearing on damages and board and executive compensation potentially subject to disgorgement or clawback; (vii) consultation with an expert relating to complex accounting issues; (viii) additional factual and legal research and analysis performed in connection with the preparation of Plaintiffs' settlement demand and mediation statement, including detailed assessments of each claim and potential defenses, research into corporate governance and

oversight best practices generally and among CPI's peer corporations; and (ix) review and analysis of information and documents exchanged with CPI and the Settling Defendants during the course of settlement negotiations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of June, 2022 at New York, New York.

*/s/ Matthew M. Houston*
Matthew M. Houston