UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

IN RE CPI AEROSTRUCTURES
STOCKHOLDER DERIVATIVE
LITIGATION,

**REPORT & RECOMMENDATION**
Master File No. 1:20-cv-2092 (ENV)(CLP)

----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On May 7, 2020, plaintiff Keith Moulton commenced a derivative action on behalf of

CPI Aerostructures, Inc. ("CPI" or the "Company"), alleging breaches of fiduciary duty and of

related claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j,

against defendants Douglas McCrosson, Vincent Palazzolo, Terry Stinson, Carey E. Bond, Janet

K. Cooper, Michael Faber, Walter Paulick, Eric Rosenfeld, and Harvey J. Bazaar (the "Settling

Defendants"), by failing to ensure that CPI had sufficient internal controls over financial

reporting (the "Moulton action"). (Moulton Compl.[1]) On October 26, 2020, Moulton filed an

amended complaint against the same defendants, which among other things, added a claim for

unjust enrichment against defendants McCrosson and Palazzolo. (Moulton Am. Compl.[2])

On November 10, 2020, Paul Berger filed a similar derivative action on behalf of CPI

against eight of the nine Settling Defendants named in the Moulton action for their alleged

breach of fiduciary duty to CPI and alleged unjust enrichment (the "Berger action"). (Berger

---

[1] Citations to "Moulton Compl." refer to the Complaint filed in the Moulton v. McCrosson action in EDNY on May 7, 2020. (Dkt. No. 20 CV 2092, ECF No. 1).
[2] Citations to "Moulton Am. Compl." refer to the Amended Complaint filed in the Moulton v. McCrosson action in EDNY on October 26, 2020. (Dkt. No. 20 CV 2092, ECF No. 10).

Compl.[3])  On March 19, 2021, the Moulton and Berger actions were consolidated pursuant to a stipulation of the parties, which was So Ordered by the Court on March 22, 2021 (the "Federal Derivative Action").  (Dkt. No. 20 CV 2092, ECF No. 21; Dkt. No. 20 CV 5454, ECF No. 16).[4] The Law Offices of Beth A. Keller, P.C. and Glancy Prongay & Murray LLP (collectively, "Lead Counsel") were appointed Lead Counsel for the Plaintiffs[5] in the Federal Derivative Action.[6]  (Id.)

Currently pending before this Court is Plaintiffs' unopposed motion for preliminary approval of a proposed derivative settlement and approval of a proposed shareholder notice and dissemination plan.  For the reasons set forth below, it is respectfully recommended that the district court grant the motion in its entirety, adopt the Plaintiffs' proposed schedule described herein, and set a date for a Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

According to Plaintiffs, CPI is a prime contractor to the United States Department of Defense, supplying aircraft parts for fixed wing aircraft and helicopters, along with providing engineering, maintenance, repair, and overhaul services, among other things.  (Moulton Am. Compl. ¶ 1).  It is alleged that in January 2018, the Company adopted the Accounting Standards

---

[3] Citations to "Berger Compl." refer to the Complaint with redactions filed in the Berger v. McCrosson action in EDNY on November 10, 2020.  (Dkt. No. 20 CV 5454, ECF No. 1).  Michael Faber is listed as a defendant in the Moulton action but not the Berger action.  Michael Faber is included as a Settling Defendant in the Proposed Settlement.

[4] Unless otherwise stated, citations to ECF documents are citations to the documents on docket No. 20 CV 2092.

[5] References to "Plaintiffs" refer to Keith Moulton and Paul Berger.  "Settling Plaintiffs" refers to Plaintiffs, as well as Robert Clancy, Karen Leslie Wurst, Robert Garfield, and Dan Woodyard.  Settling Plaintiffs initiated the Federal Derivative Action, the State Court Actions, and the various Inspection and/or books and records demands.  (See ECF No. 28).  See discussion infra at 3-5.

[6] References to "Plaintiffs' Counsel" refers to Lead Counsel, the Law Offices of Beth A. Keller, P.C., and Glancy Prongay & Murray LLP, as well as the Paskowitz Law Firm P.C., Shuman, Glenn & Stecker, Pomerantz LLP, and Bragar Eagel & Squire, P.C.  These latter four firms represented other shareholder plaintiffs in connection with the Federal Derivative Action, the State Court Actions, and the various Inspection and/or books and records demands.  (See ECF No. 28; see also id. (attaching firm résumés as exhibits)).

2

Codification ("ASC") Topic 606, which governed revenue recognition from customer contracts. (Id. ¶ 2). The Company reported in 2018 that revenue recognition for its contracts under the new accounting standard did not materially change from CPI's prior practice. (Id.) However, a year later in February 2019, the Company disclosed that its financial statements reported in its Form 10-Q for the period ending September 30, 2018 could no longer be relied on due to a billing process error. (Id. ¶ 4). Based on the news of the error, CPI's stock price fell by $0.59 per share, causing injury to the Company's shareholders. (Id. ¶ 61).

In February 2020, the Company revealed that its financial statements for the previous several quarters could not be relied upon due to an error relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606. (Id. ¶ 5). CPI's stock price then fell a second time by $1.80 per share. (Id. ¶ 91).

This announcement prompted the filing on February 24, 2020 of a securities class action brought by Mark A. Rodriguez against CPI and defendants McCrosson and Palazzolo, which was later amended to add as defendants Canaccord Genuity LLC and B. Riley FBR. See Rodriguez v. CPI Aerostructures, Inc., No. 20 CV 982, (ENV) (CLP) (E.D.N.Y.). One day after the filing of the Rodriguez action, on February 25, 2020, Russell Garrett filed a similar suit against CPI and defendants McCrosson and Palazzolo, alleging violations of the securities laws. Garrett v. CPI Aerostructures, Inc., No. 20 CV 1026 (ENV) (CLP) (E.D.N.Y.). The two suits were later consolidated into one action (the "Securities Class Action").[7] (Dkt. No. 20 CV 982, ECF No. 24). On November 10, 2021, this Court recommended granting the Securities Class plaintiffs' motion for preliminary approval of a proposed settlement of the Securities Class Action (Dkt. No. 20 CV 982, ECF No. 58), and on May 27, 2022, the district court adopted the

---

[7] The case proceeded under the Rodriguez docket and the Court Ordered the Garrett case administratively closed on April 22, 2021.

recommendation.

While these cases were being filed in federal court, plaintiff Paul Berger made a demand on February 28, 2020, pursuant to New York common law, to inspect various books and records of the Company from January 2018 to the present (the "2020 Inspection Demand"). (Pls.' Mem.[8] at 3). CPI, however, rejected Berger's demand in a letter dated March 20, 2020. (Id.) Berger thereafter filed suit on June 5, 2020 in the Supreme Court of the State of New York, seeking to inspect CPI's books and records. Berger v. CPI Aerostructures, Inc., Index No. 606553/2020 (N.Y. Sup. Ct. Suffolk Cnty.). That action was dismissed by stipulation on September 10, 2020, after CPI produced documents. (Pls.' Mem. at 4).

A number of other actions were also filed in New York State Court. On September 17, 2020, plaintiff Dan Woodyard commenced a derivative action in Supreme Court, Suffolk County (the "Woodyard action"). Woodyard v. McCrosson, Index No. 613169/2020 (N.Y. Sup. Ct. Suffolk Cnty.). A month later, on October 14 and October 15, 2020, respectively, plaintiffs Karen Leslie Wurst and Robert Clancy served books and records demands on CPI pursuant to Section 624 of the New York Business Corporation law and common law. (Pls.' Mem. at 5). Thereafter, on March 24, 2021, upon review of the records, Wurst and Clancy commenced a derivative action in Supreme Court Suffolk County (the "Wurst action"). Wurst v. Bazaar, Index No. 605244/2021 (N.Y. Sup. Ct. Suffolk Cnty.). The Woodyard and Wurst actions were stayed by the state court pending a decision on a motion filed to dismiss the Securities Class Action (collectively, the Wurst and Woodyard actions constitute the "State Court Actions"). (Pls.' Mem. at 5).

---

[8] Citations to "Pls.' Mem." refer to the Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice, dated June 16, 2022. (ECF No. 24).

In April 2021, Keith Moulton and Robert Garfield filed a request for corporate records related to CPI's compliance with anti-discrimination laws (the "2021 Inspection Demand").  (Id.) Although CPI initially rejected the demand, it subsequently agreed to produce certain documents pursuant to a confidentiality agreement.  (Id. at 5–6.)  The parties then commenced settlement negotiations, and participated in a mediation in May 2021, before John R. Van Winkle of Van Winkle Batten Dispute Resolution.  (Id. at 6.)  Although the case did not settle at that initial mediation session, the parties participated in a second session with the mediator on March 30, 2022, and reached an agreement in principle to settle the Federal Derivative Action, State Court Actions, and the 2021 Inspection Demand.  (Id.)  The terms of the proposed settlement are set forth in the Stipulation of Settlement ("Proposed Settlement"[9]) attached to the Declaration of Matthew Houston, Esq., counsel for Plaintiffs.  (Houston Decl.[10])

## DISCUSSION

A.  Legal Standard

Plaintiffs commenced this action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, which provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  General public policy favors settlement, In re Metropolitan Life Derivative Litig., 935 F. Supp. 286, 291 (S.D.N.Y. 1996) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied sub nom, Lewy v. Weinberger, Coyne v. Weinberger, 464 U.S. 818 (1983)), and particularly in shareholder derivative actions which are "notoriously difficult and unpredictable."  Mathes v.

---

[9] Citations to "Proposed Settlement" refer to the Stipulation of Settlement filed on June 16, 2022 as Exhibit 1 to Matthew M. Houston's Declaration.  (ECF No. 25-1).

[10] Citations to "Houston Decl." refer to the Declaration of Matthew M. Houston in Support of Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice, filed on June 16, 2022.  (ECF No. 25).

Roberts, 85 F.R.D. 710, 713 (S.D.N.Y. 1980) (quoting Schimmel v. Goldman, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)).

In determining whether to approve the settlement of a derivative action, courts look to cases and standards under Rule 23(e) of the Federal Rules of Civil Procedure for guidance by analogy. Accord In re OSI Sys., Inc. Derivative Litig., No. 14 CV 2910, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (explaining "[t]he Court takes as instructive case law governing preliminary approval of class action settlements under Rule 23(e)"). As the court in In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation explained: "[d]uring the preliminary approval stage, a court 'must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.'" 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (quoting In re Initial Pub. Offering Secs. Litig., 243 F.R.D. 79, 87 (S.D.N.Y. 2007)). In analyzing a proposed class settlement "[a]t the preliminary approval stage, the Court must ask whether it 'will likely be able to' . . . approve the settlement as fair, reasonable, and adequate." Gordon v. Vanda Pharms. Inc., No. 19 CV 1108, 2022 WL 4296092, at *2 (E.D.N.Y. Sep. 15, 2022) (citing Rosenfeld v. Lenich, No. 18 CV 6720, 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021)); see also Mikhlin v. Oasmia Pharm. AB, No. 19 CV 4349, 2021 WL 1259559, at * 2 (E.D.N.Y. Jan. 6, 2021) (holding that "to grant preliminary approval the court must consider the factors relevant to final approval . . . and must conclude that it is likely to find that those factors are satisfied").

In the context of a derivative action, "the Court must be satisfied that the compromise fairly and adequately serves the interest of the corporation on whose behalf the derivative action was instituted" before approving a proposed settlement. In re AOL Time Warner S'holder Derivative Litig., No. 02 CV 6302, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (internal

quotation marks omitted) (quoting Mathes v. Roberts, 85 F.R.D. at 713). Among other things, courts "must consider whether the settlement was procedurally fair . . . and whether the substantive terms of the settlement 'are in the interests of the company and its shareholders relative to the likely rewards of litigation.'" Scott v. Wei, No. 15 CV 9691, 2021 WL 1910657, at *1 (S.D.N.Y. May 12, 2021) (quoting In re Pfizer Inc. S'holder Derivative Litig., 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011)). "A court should not engage in mere 'rubber stamp approval' of the settlement, yet it must 'stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *2 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)).

B. Procedural Fairness

In its review of the proposed derivative settlement, a court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *3 (internal quotation marks omitted) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)); see also In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986) (explaining that "[i]n approving the proposed settlement of a class action, a district court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately").

If the parties engaged in discovery prior to negotiations, that would suggest the negotiations were legitimate and representation was effective.  See In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *3 (finding a derivative action settlement was procedurally fair where "[t]he negotiation phase followed significant discovery, which bolstered the parties' assessment of the strengths and weaknesses of their positions and informed their negotiation strategies"); see also Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017) (noting "the presumption of fairness when a class settlement has been reached after 'arm's-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom, Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc., 544 U.S. 1044 (2005)).

Plaintiffs note that the Proposed Settlement was the result of arm's-length negotiations following significant investigation by Lead Counsel.  (Pls.' Mem. at 14).  They reviewed various records, including Company press releases, recorded public statements, SEC filings and securities analysts' reports, business and media reports, filings in the related Securities Class Action, internal documents produced pursuant to the books and records demands, legal research and analysis, a compilation of data bearing on executive compensation and the compensation of CPI's Board, possibly subject to clawback, consultation with an expert relating to accounting issues, and review of the information exchanged during the course of settlement negotiations. (Id. at 14–15; Houston Decl. ¶ 5).  The breadth of counsel's research into the facts and legal claims underlying this action suggests that the negotiation process was engaged in meaningfully and faithfully to the shareholders' interests.

Lead Counsel further states that they have "significant experience" in derivative litigation and have negotiated derivative settlements in the past.  (Pls.' Mem. at 15; Houston Decl. ¶ 4).  According to their firm resumes, Glancy Prongay & Murray has served as lead or co-lead counsel for at least 20 securities class actions, which have settled for millions (ECF No. 20-1), and the Law Offices of Beth A. Keller, P.C. has served as lead or co-lead counsel in numerous complex cases, including shareholder derivative cases, that have settled for millions.  (ECF No. 20-2).  Based on their review of all of the information outlined above and their investigation into the underlying events, it is counsel's conclusion that the terms of the Proposed Settlement are "fair, reasonable, and adequate, and in the best interests of the Company."  (Houston Decl. ¶ 4).

In addition to Lead Counsel, Plaintiffs themselves appear to be adequate representatives of similarly situated shareholders.  Rule 23.1 provides that a derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation." Fed. R. Civ. P. 23.1(a).  "The 'fair and adequate representative' inquiry focuses on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders."  Cohen v. Bloch, 507 F. Supp. 321, 324 (S.D.N.Y. 1980); see also id. at n.2 (offering the possible "rule" that "when a derivative plaintiff demonstrates to the court an intent and desire to vigorously prosecute the underlying corporate claim and when he has engaged competent counsel to assist in that endeavor then, absent either a conflict of interest . . . or the existence of antagonism between the plaintiff and other shareholders . . . , the representation requirement of Rule 23.1 is met") (quoting Sweet v. Bermingham, 65 F.R.D. 551, 554 (S.D.N.Y. 1975)).  Here, Plaintiffs both were shareholders of CPI continuously throughout the relevant time period from 2018 to 2020, and remain shareholders as of the date of the

motion.[11]  Lead Counsel also believe that these Plaintiffs are adequate representatives because they were involved in and oversaw the litigation and retained legal counsel with shareholder derivative litigation experience.  (Pls.' Ltr.[12] at 1–2).

Not only does the adequacy of Lead Counsel and Plaintiffs suggest that the Proposed Settlement was procedurally fair, but so too does the fact that the parties attended multiple formal mediation sessions before an experienced mediator and they participated in dozens of negotiation exchanges over the course of approximately a year.  (Pls.' Mem. at 6).  This formal process, along with a neutral mediator's involvement, are "hallmarks of a non-collusive, arm's length settlement process."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015); cf. D'Amato v. Deustche Bank, 236 F.3d at 85 (explaining "[t]his Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  In light of the bona fide mediation and negotiation process in which the parties engaged, the Court finds that the Proposed Settlement appears to be the result of an arm's-length negotiation process rather than collusion.  Therefore, the Court finds that the process by which the Proposed Settlement was arrived at should be preliminarily approved as procedurally fair.

C.  Fairness of the Terms of the Proposed Settlement

In urging this Court to preliminarily approve the Proposed Settlement and set a hearing date, Plaintiffs contend that the Proposed Settlement "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted."  (Pls.' Mem. at 9 (quoting

---

[11] Plaintiff Berger has continuously owned CPI stock since 2008.  (ECF No. 28-1 ¶ 3).  Plaintiff Moulton has continuously owned CPI stock since December 2017.  (ECF No. 28-2 ¶ 3).

[12] Citations to "Pls.' Ltr." refer to the letter filed by Lead Counsel on September 19, 2022, addressing the adequacy and standing of Settling Plaintiffs and providing additional information about the attorneys' fee award. (ECF No. 28).

In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at * 2)).  Of those factors

that the Second Circuit has enumerated to guide the substantive fairness review of a class action

settlement, four are particularly relevant to the review of settlements in shareholder derivative

actions:  "(1) the reasonableness of the benefits achieved by the settlement in light of the

potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued

litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder

objections to proposed settlement."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F.

Supp. 3d at 281 (quoting In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114,

at *3); see also In re Metropolitan Life Derivative Litig., 935 F. Supp. at 292 (adding "the quality

of the negotiating process and views of counsel"); accord City of Detroit v. Grinnell Corp., 495

F.2d at 463.  When faced with a request for preliminary approval of a proposed settlement, the

Court is not asked to determine the ultimate fairness of the proposed settlement but "whether

there is any reason to notify [interested shareholders] of the proposed settlement and to proceed

with a fairness hearing."  In re Prudential Secs. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209

(S.D.N.Y. 1995) (quoting Armstrong v. Board of Sch. Dirs., 616 F.2d 305, 314 (7th Cir. 1980),

abrogated on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998)).

1. The Reasonableness of the Benefits of the Settlement

In evaluating the terms of a derivative settlement, courts recognize that "there is a range

of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp.

3d at 281 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).  "Moreover, in

derivative actions where the harm done is to the corporation, a monetary benefit is not necessary for settlement approval." Id.

In this case, the Proposed Settlement consists of a number of corporate governance reforms that relate directly to the claims in the Federal Derivative Action.[13] The Moulton and Berger Complaints allege that CPI's Board of Directors breached their fiduciary duties and violated the Securities and Exchange Act, through poor corporate governance and lack of internal controls in a way that has brought reputational and financial harm to CPI. (See, e.g., Moulton Am. Compl. ¶¶ 40, 46, 53, 58, 64, 69, 75, 87, 89, 130–32; Berger Compl. ¶¶ 35, 56–57, 60, 92, 116, 142, 144–46). Plaintiffs assert that the corporate reforms set out in the Proposed Settlement are calibrated to remedy those harms complained of and therefore are reasonable. Compare In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *4 (finding a derivative settlement conferred substantial benefits where "more importantly, the governance and compliance provisions memorialized in the Settlement directly address the failure of internal controls that precipitated the instant lawsuits").

Certain reforms are proposed to deal with the training, education, evaluation, self-assessment and reporting of the Company's directors, including a requirement for directors to attend training and best-practices classes, along with an annual presentation by an outside provider on corporate governance. (Proposed Settlement Section V ¶ 3.1(A)). In addition, within twelve months after final approval of the settlement, the Company will appoint a new Board member who meets certain specified diversity objectives and who is independent within the meaning of the New York Stock Exchange American listing standards. (Id. ¶ 3.1(B)). As

---

[13] In Plaintiffs' motion for preliminary settlement approval, Plaintiffs indicate that the proposed corporate governance reforms were calibrated in response to not only the Federal Derivative Action, but also the State Court Actions and the 2021 Inspection Demand. (Pls.' Mem at 9).

part of the Proposed Settlement, the Company further acknowledges that the Federal Derivative Action was a material factor leading to the appointment of Richard S. Caswell to the Board and as Chairperson of the Audit and Finance Committee, to the appointment of Andrew Davis as Chief Financial Officer, and to the appointment of a new Controller.[14]  (Id. ¶¶ 3.1(B), (C), (D)).

The Proposed Settlement also provides for changes in the duties and responsibilities of the Audit Committee.  (Id. ¶ 3.2).  Among other things, the Committee will be tasked with monitoring new accounting pronouncements likely to affect the Company; discuss pending technical and regulatory matters; work with an outside consultant to conduct an annual assessment of management's contract review process to ensure compliance with Generally Accepted Accounting Principles; work with an outside consultant to ensure that the Company's enterprise risk management function is in accordance with the Committee of Sponsoring Organizations guidelines, and finally to conduct an annual assessment of the outside auditor engagement team.  (Id. ¶¶ 3.2(a)–(e)).  The Audit Committee's functions include interviewing key employees, identifying relevant laws and regulations posing compliance risks, and reporting to the Board on any risks that may have financial implications for the Company.  (Id. ¶ 3.2).  The Company also acknowledges that the Federal Derivative Action was a material factor in the Company's decision to hire a new independent outside auditor, RSM US LLP.[15]  (Id.  ¶ 3.4).

The Proposed Settlement also requires CPI to retain an outside consultant to ensure compliance with ASC 606.  (Id. ¶ 3.3).  The consultant will be asked to review the Company's revenue recognition practices; make recommendations for remediation if needed; and

---

[14] The Company also credits the State Court Actions and the 2021 and 2020 Inspection Demands as being substantial or material factors in these appointments.  (See Proposed Settlement ¶¶ 3.1(B), (C), (D)).

[15] The Company also credits the State Court Actions as being substantial or material factors in the hiring of a new independent outside auditor.  (See Proposed Settlement ¶¶ 3.4).

recommend training for officers, directors, and personnel.  (Id.)  The Proposed Settlement further requires the Company to establish a training program, led by the CFO, for all members of the Company's finance team tasked with ensuring compliance with securities reporting and accounting regulations.  (Id. ¶ 3.5).

With respect to diversity and anti-discrimination policies, the Proposed Settlement requires the Company to continue to retain an outside consultant to review its anti-discrimination policies and develop diversity objectives.[16]  (Id. ¶ 3.6).  The Company will encourage and promote diversity among the Board members and senior management roles, with an Action Plan designed to recruit and attract diverse candidates.  (Id. ¶ 3.7).  The Company acknowledges that the Federal Derivative Action was a material factor in the appointment of diverse female candidates for the position of Vice President of Human Resources and Administration and the Controller.[17]  (Id.)

The Proposed Settlement also requires the Company to maintain written policies and procedures to protect whistleblowers.  (Id. ¶ 3.8).  This requires, among other things, maintenance of a written log of complaints and the results of investigations into the complaints, a report to the Board at every regularly scheduled meeting of any whistleblower complaints, a requirement that the Company post information about its whistleblower policy on its website and inform employees of their options and protections in connection with reporting matters to the Company.  (Id. ¶¶ 3.8(a) – (d)).

---

[16] The 2021 Inspection Demand was commenced "to investigate possible breaches of fiduciary duty relating to CPI's compliance with antidiscrimination laws."  (Proposed Settlement at 2).  Such diversity initiatives appear to have been crafted in response to the 2021 Inspection Demand.

[17] The Company also credits the State Court Actions and the 2021 and 2020 Inspection Demands as being substantial or material factors in these appointments.  (See Proposed Settlement Section V ¶ 3.7).

14

Finally, the Proposed Settlement also provides for a release of claims. According to the

Proposed Settlement, the parties agree to release all known or unknown claims

> brought by Plaintiffs, CPI, or any other purported CPI shareholder: (i) that were
> asserted in any of the Actions,[18] or (ii) that could have been asserted in any of the
> Actions by Plaintiffs, CPI, or any other CPI Shareholders against any of the
> Settling Defendants in any forum, and that arise out of, are based upon, or relate
> to, or are in consequence of, the allegations . . . in any of the Actions or in the
> 2021 Inspection Demand. "Released Claims" does not, however, include any
> claims brought to enforce the Settlement or any claims asserted in the Securities
> Class Action.

(Id. ¶¶ 1.16, 1.17, 5). In other words, the Proposed Settlement only releases those claims that

relate to, arise out of, or could have been raised as part of the Federal Derivative Action or the

State Court Actions, which suggests the release is proper. By limiting released claims to those

that were or could have been asserted in the Federal Derivative Action or the State Court

Actions, only those claims which could have been represented by counsel in these matters are

released. See Employees Ret. Sys. of St. Louis v. Jones, No. 20 CV 4813, 2022 WL 14160253,

at *6 (S.D. Ohio Aug. 23, 2022) (approving a derivative shareholder settlement where "[t]he

parties properly have limited their release to claims that are 'based on, arise from or relate to the

allegations . . . set forth in the Complaints'"); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,

396 F.3d at 106 (in the context of a Rule 23(b)(2) and 23(b)(3) class action, explaining that

"[p]laintiffs' authority to release claims is limited by the 'identical factual predicate' and

'adequacy of representation' doctrines . . . [, which] allow plaintiffs to release claims that share

the same integral facts as settled claims, provided that the released claims are adequately

represented prior to settlement").

---

[18] The Proposed Settlement defines "Actions" as: "(i) the consolidated proceedings entitled *In re: CPI Aerostructures Stockholder Derivative Litigation,* Master File No. 1:20-cv-02092, pending in the U.S. District Court for the Eastern District of New York; (ii) *Wurst, et al. v. Bazaar, et al.*, Index No. 605244/2021, pending in New York Supreme Court (Suffolk County); and (iii) *Woodyard v. McCrosson, et al.*, Index No. 613169/2020, also pending in New York Supreme Court (Suffolk County)." (Proposed Settlement Section V ¶ 1.1).

While the claims alleged in the consolidated actions are complex ones that could make recovery at trial uncertain, the current CPI Board recognizes that the Proposed Settlement confers significant benefits on the Company, including the resolution of the Federal Derivative Action.[19]  Moreover, CPI's Board believes shareholders will also benefit from the reforms being implemented as set forth above.  (Pls.' Mem. at 14).

2. The Likelihood of Success and the Risks of Litigation

In analyzing the risks of continued litigation and the likelihood of Plaintiffs' ultimate success, "[t]he doctrine of demand futility,[20] the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d at 281–82; see also Jiminian v. Seabrook, 760 F. App'x 38, 41 (2d Cir. 2019) (summary order) (explaining that "[b]ecause derivative actions inherently interfere with the managerial discretion of corporate boards, New York has 'historically been reluctant to permit shareholder derivative suits, noting that the power of courts to direct the management of a corporation's affairs should be exercised with restraint'") (quoting Marx v. Akers, 88 N.Y.2d 189, 194, 666 N.E.2d 1034, 1037, 644 N.Y.S.2d 121, 124 (1996)).

---

[19] According to the Proposed Settlement, as of the effective date of the Settlement Agreement, the parties will no longer pursue the State Court Actions and the 2021 Inspection Demand, and within five days of the approval of the Settlement Agreement, the plaintiffs in the State Court Actions will move to dismiss those actions with prejudice and without fees or costs.  (Proposed Settlement Sections IV, V ¶¶ 4.4, 4.5).

[20] The doctrine of demand futility refers to the narrow exception to the precondition to filing a derivative suit that requires a "shareholder [to] demonstrate that the corporation itself had refused to proceed after suitable demand."  Jiminian v. Seabrook, 760 F. App'x 38, 41–42 (2d Cir. 2019) (summary order) (quoting Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004)).  To satisfy the exception, a plaintiff must show that making a demand on the corporation itself prior to suit would have been a futile act.  See id. at 41–42 (explaining that demand futility is a narrow exception and setting out the three-part showing plaintiffs must make to demonstrate demand futility).  Plaintiffs in the Federal Derivative Action have alleged that making a pre-suit demand on CPI would have been a futile act and so they should be excused from making one.  (Moulton Am. Compl. ¶¶ 136–67; Berger Compl. ¶¶ 147–50).

Since this motion for settlement approval was filed prior to defendants' filing an Answer or response to the Complaints, and there has been no other substantive motion practice, Plaintiffs' theories of standing and liability have not yet been tested.  Moreover, defendants continue to deny any liability or wrongdoing.  (Proposed Settlement Section III).  In the face of the significant risks posed by shareholder derivative litigation, Plaintiffs' relatively early settlement offers substantial benefits that might not otherwise be obtained if the litigation continued.

3.   The Burdens of Continued Litigation

As previously mentioned, "because shareholder derivative actions are notoriously difficult and unpredictable, . . . settlements are favored."  In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *3 (internal quotation marks omitted) (omission in original) (quoting Mathes v. Roberts, 85 F.R.D. at 713).  Particularly here, where the consolidated action is roughly two years old, defendants have not yet responded to the Complaints, and there are two actions pending in state court, further litigation would likely be protracted and expensive for all parties.  See In re Metropolitan Life Derivative Litig., 935 F. Supp. at 293–94 (finding settlement would be in the best interest of all parties, rather than litigation, where, in part, the "consolidated federal case is already substantially more than two years old," "[f]our state court cases are also pending," defendants' motion to dismiss was still pending, and "the deposition phase of the case would be extremely expensive and time-consuming").

4. <u>Shareholder Objections</u>

As this is the preliminary approval phase, notice of the proposed settlement has not been sent out yet to other shareholders and no objections have yet been lodged, so this fourth factor is irrelevant at this stage.

5. <u>Substantive Fairness Summation</u>

Having reviewed Plaintiffs' unopposed motion, the Proposed Settlement, and the supporting declarations and documents, the Court finds that Plaintiffs have preliminarily satisfied the requirements of Rule 23.1 and made the requisite showing that the settlement appears to be the product of serious, non-collusive negotiations, by informed and experienced counsel, and that the terms of settlement will confer significant and material benefits on the Company and on its shareholders. Based on the information before the Court, the Court finds that it is likely that the Proposed Settlement will ultimately be approved as fair, reasonable, and adequate. The Court further finds that there is reason to notify the interested shareholders. and there is reason to proceed with a fairness hearing at which time the ultimate decision as to approval will be made.

Accordingly, it is respectfully recommended that the district court grant preliminary approval of the Proposed Settlement.

D. <u>Reasonableness of the Attorneys' Fees</u>

Counsel may be entitled to an award of attorney's fees in a derivative action that confers substantial non-monetary benefits to the corporation. See <u>In re Fab Universal Corp. S'holder Derivative Litig.</u>, 148 F. Supp. 3d at 283; <u>Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.</u>, 54 F.3d 69, 71 (2d Cir. 1995); <u>accord</u> <u>In re Rambus Inc. Derivative Litig.</u>, No. 06 CV 3513, 2009 WL 166689 at *3 (N.D. Cal. Jan. 20, 2009) (explaining that after the Supreme Court's decision in <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375 (1970), "courts

consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief"). "When assessing whether attorneys' fees are appropriate, courts consider the so-called *Goldberger* factors: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the litigation risk; (iv) the quality of representation; (v) public policy considerations; and (vi) the time and labor spent." Scott v. Wei, 2021 WL 1910657, at *3 (citing Goldberger v. Integrated Res., Inc., 209 F.3d at 50).

As part of the Proposed Settlement, Plaintiffs' Counsel, which includes Lead Counsel and firms that represented other shareholder plaintiffs, seek $585,000 in attorney's fees. (Proposed Settlement Section V ¶ 6.1). This attorney's fee award was arrived at after negotiating the material substantive terms of the Proposed Settlement. (Id.; see also Pls.' Ltr. at 2 & n.2). As already discussed, the Proposed Settlement appears to offer substantial benefits to shareholders in light of the complexity of this matter and the risks posed by continuing litigation.

In calculating attorney's fees, "a factor in assessing the amount of the fee to be awarded is the degree to which plaintiffs' attorneys' services benefitted the corporation, and that such benefit must therefore be weighed and evaluated, even if unquantifiable." Seinfeld v. Robinson, 277 A.D.2d 24, 24, 715 N.Y.S.2d 404, 405 (1st Dep't 2000). Here, in explaining the basis for the requested fee of $585,000, Plaintiffs' Counsel explains that the fee award was the result of an evaluation of the substantial benefits that the settlement brought, and a process in which "the Mediator issued a 'double-blind' Mediator's proposal, which ultimately was accepted by both plaintiffs and defendants." (Pls.' Ltr. at 3–4). Based on a review of precedential cases in this Circuit, Plaintiffs' Counsel believes that the award "is within the 'range of reasonableness' such that preliminary approval is warranted." (Id. at 9; see also id. at 5–8 (collecting cases)). As for

the lodestar method, Plaintiffs' Counsel "believe[] the lodestar will exceed the fee requested and result in a negative multiplier," but that Plaintiffs will provide the final lodestar along with their request for final settlement approval.  (Pls.' Ltr. at 5 n. 6).

From the fee award, Plaintiffs' Counsel also seeks to award Settling Plaintiffs $1,500 each, subject to Court approval.  (Proposed Settlement Section V ¶ 6.3).  The Proposed Settlement makes clear that "[t]he Court's decision regarding whether to approve any requested service award, in whole or in part, shall have no effect on the Settlement."  (Id.)  The Court recognizes that the Settling Plaintiffs took on leadership roles and enlisted the assistance of experienced counsel to further CPI's interests.  An additional consideration favoring approval is that the individual award amounts are minimal and will be paid for out of the attorney's fees, with no impact on the rest of the settlement.  Compare Scott v. Wei, 2021 WL 1910657, at *4 (approving an incentive award for the main plaintiff in the amount of $1,500 because the amount was minimal, the plaintiff had "undertaken a leadership role and devoted time and energy to this litigation," and the award was to be paid out of the attorney's fees and would "therefore not impact the rest of the settlement").

In light of the considerable time and effort spent on this two-year old controversy, the significant benefits conferred by the Proposed Settlement, and the fact that Plaintiffs' Counsel seek a negative lodestar multiplier, the Court respectfully recommends that the attorney's fee award and the awards to the Settling Plaintiffs be preliminarily approved.

E.  Proposed Notice

Under Rule 23.1, "[n]otice of a proposed settlement . . . must be given to shareholders or members in the manner that the court orders."  Fed. R. Civ. P. 23.1(c).  The Plaintiffs ask the Court to approve the proposed Notice and Summary Notice to notify those CPI shareholders who

held stock as of the date of preliminary approval.  (Proposed Settlement Exs. A-1, A-2).  As to

the content of the Notice, generally "[t]here are no rigid rules to determine whether a settlement

notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must

'fairly apprise the prospective members of the class of the terms of the proposed settlement and

of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores, Inc.

v. Visa U.S.A., Inc., 396 F.3d at 114 (quoting Weinberger v. Kendrick, 698 F.2d at 70).

     Here, the proposed Notice advises the shareholders of the essential terms of the Proposed

Settlement, sets forth the date of the final hearing, and describes the procedures for objecting to

the terms of the Settlement Agreement and the fee awards.  (Pl.'s Mem. at 16–17).  As to the

terms of the Proposed Settlement, both the Notice and the Summary Notice reference the

attorney's fee award, the release of claims, the corporate reforms, and instructions on where to

find the full text of the Settlement Agreement.  (Proposed Settlement Exs. A-1, A-2).  The

content of the Notices therefore fairly apprises shareholders of their options with respect to the

Proposed Settlement and the contents of the Proposed Settlement.  Compare In re Wells Fargo &

Co. S'holder Derivative Litig., No. 16 CV 5541, 2019 WL 13020734, at *9 (N.D. Cal. May 14,

2019) (approving notice of a proposed derivative settlement where the content "describes the

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

and to come forward and be heard") (quoting In re Hewlett-Packard Co. S'holder Derivative

Litig., 716 F. App'x 603, 609 (9th Cir. 2017)).

     As to the method of dissemination of the Notice, the parties propose that notice be

provided by:  1) filing a copy of the Notice and Proposed Settlement with the SEC via a Form 8-

K; 2) publication of the Summary Notice in a press release in Investors Business Daily; and 3)

posting a link to the Proposed Settlement and Notice on CPI's website at

https://investors.cpiaero.com/homepage/default.aspx.  (Pls.' Mem. at 16).  Having considered the proposed methods for dissemination, the Court finds that the notice provisions satisfy the requirements of Rule 23.1.  See In re Wells Fargo & Co. S'holder Derivative Litig., 2019 WL 13020734, at *9 (approving proposed notice where it was disseminated through several national newspapers, by use of Form 8-K, and by publication on defendants' website and a website created for the purpose of providing notice); In re Comverse Tech., Inc. Derivative Litig., No. 06 CV 1849, Slip op. at 3 (E.D.N.Y. April 2, 2010) (approving proposed notice through the use of a Form 8-K, posting on the company's website, and publication in The Wall Street Journal); In re Metropolitan Life Derivative, Litig., 935 F. Supp. at 294 & n.10 (noting that notice of the proposed settlement was adequate where notice was published in five newspapers twice); see also In re Rambus Inc. Derivative Litig., 2009 WL 166689, at *2 (noting that notice of the settlement was effectuated by Form 8-K, publishing of a press release in Business Wire, and posting on the company's website).

Accordingly, it is respectfully recommended that the district court approve the proposed Notice and methods of dissemination.

<u>CONCLUSION</u>

In summary, the Court respectfully recommends that the district court grant preliminary approval to the Proposed Settlement and authorize dissemination of the proposed Notice in accordance with the methods specified herein.

Plaintiffs further propose that the district court adopt the following schedule for the Fairness Hearing:

1) Dissemination of the Notice to CPI shareholders – to take place no later than 10 business days after entry of the Preliminary Approval Order;

2) Plaintiffs to file papers in support of the final settlement approval and request for fees – to take place no later than 21 days prior to the date of the final Fairness Hearing;

3) Shareholder objection deadline – no later than 14 days prior to the date of the final Fairness Hearing;

4) Plaintiffs to file a response to any shareholder objections no later than 7 days prior to the date of the final Fairness Hearing;

5) Fairness Hearing – to be scheduled no less than 45 days after Notice is given to the shareholders.

The Court finds the proposed schedule reasonable and respectfully recommends that the district court adopt the proposed schedule and set a date for a final fairness hearing.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the district court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 14, 2023

*Cheryl L. Pollak*

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York